AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

FILED
APR -8 2020
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The cellular telephone assigned call number (580) 351-7602, that is stored at premises controlled by U.S. Cellular | )<br>)<br>) Case No. M-20- 149 -SM<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery |

The application is based on these facts:

See Affidavit, attached hereto

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Shana M. Terry, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 8, 2020

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma     SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(580) 351-7602** THAT IS STORED AT PREMISES CONTROLLED BY **U.S. CELLULAR** | Case No. MJ-20-149-SM |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Shana M. Terry, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call numbers **(580) 351-7602** (the "**SUBJECT PHONE**") that is stored at premises controlled by **U.S. Cellular**, a wireless telephone service who's Custodian of Records can be reached by fax number 866-669-0894. The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **U.S. Cellular** to disclose to the government copies of the information further described in Section I of **Attachment B**. Upon receipt of the information described in Section I of **Attachment B**, government-authorized persons will review the information to locate items described in Section II of **Attachment B**.

2. I am a Special Agent with the FBI, and have been since February 2019. During that time, I have conducted a wide variety of investigations. Telephone location information helps law enforcement determine where a particular person (or at least their cell phone) was at a particular time—highly useful information in corroborating other aspects of the investigation.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from records, other law enforcement agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that John Scott Brooks (DOB: XX-XX-1983 / SSN: XXX-XX-1708) ("**BROOKS**"), who used the **SUBJECT PHONE**, has been involved in a bank robbery, in violation of 18 U.S.C. § 2113(a). There is also probable cause to search the information described in **Attachment A** for evidence of this crime as further described in **Attachment B**.

## PROBABLE CAUSE

5. On March 23, 2020, at approximately 10:40 a.m., a male pulled into the drive-thru lane nearest the teller window of Southwest Oklahoma Federal Credit Union (SWOFCU) located at 6714 West Gore Boulevard, Lawton, Oklahoma 73505, in a light-colored SUV. The male dumped the contents of a white plastic bag into the teller drawer, and then drew the plastic bag back into the vehicle. The contents of the bag included a hand-written demand note and what appeared to the teller to be an explosive device. According to the teller, the first part of the note read something similar to, "Please be quiet". Inside the vehicle, the robber did something on his cellular phone and then held up a tablet, which was counting down time. The teller put $10,945, consisting only of denominations of $50 and $100, plus three twenty-dollar bait bills into the drawer and sent it back to the robber. The robber took the money, demand note, and device out of the drawer and drove away. The bait bills given to the robber bore the following serial numbers:

1. ML50631809A

2

    2. JG47704533D

    3. MK86019642A

    6.    The teller described the robber as a white male with a slight tan and a dark brown beard or scruff. Based upon information provided by the victim teller and review of bank video surveillance, it was determined that the robber was wearing dark sunglasses, a dark colored glove with white lettering running down the ring finger on his left hand, a black beanie on his head, and a blue and white plaid shirt. The bank robber was driving a 4-door Ford Expedition or similar SUV, silver or white in color, with a light-colored interior. The victim teller believed the vehicle had a temporary Oklahoma paper tag. Lawton Police Department (LPD) officers reporting to the scene immediately following the robbery reported that the victim teller was visibly distraught and upset to the point that she needed time to compose herself before she was able to provide detailed information to the responding officers. Based on the bank surveillance video, it appears that the bank robber was within approximately eight to ten feet of the victim teller, and the robbery lasted approximately one minute and twenty seconds. At the time of the robbery, the accounts of Southwest Oklahoma Federal Credit Union were insured by the National Credit Union Administration (NCUA).

    7.    On March 23, 2020, the FBI received a tip regarding the bank robbery suspect (unrelated to John Brooks). The suspect had a Facebook page which included multiple photos. One of those photos was shown to the victim teller for identification. The victim teller was unable to positively identify the photo as the bank robber.

    8.    On March 24, 2020, the FBI issued a press release to the media regarding the bank robbery, which was widely distributed by news media. The press release included photos of the subject and the robbery vehicle taken from bank surveillance footage.

9. LPD responded to the scene following the robbery and has been working jointly with the FBI on this case. On March 24, 2020, bank surveillance photographs from the aforementioned bank robbery were published to the media. On March 25, 2020, the FBI received a tip from Detective Abraham Woelfel from LPD. He advised that earlier that day he had talked to an employee of Stripes gas station, located near the victim branch of SWOFCU. After talking to her regarding an unrelated matter, she confided to him that she believed to know who the bank robber was. The Stripes employee told Detective Woelfel that the surveillance photo she had seen on the news looked like **JOHN BROOKS**. **BROOKS** was a frequent customer at the gas station, and often came in with his two boys. It was common for **BROOKS** to wear a long-sleeve button-down shirt, similar to what the bank robber was seen wearing in the surveillance photo. The Stripes employee knew **BROOKS'** father owned a construction company.

10. Detective Woelfel provided the FBI with information and individual contact records related to **JOHN BROKOS**, which showed multiple arrests for drug-related offenses. According to LPD records, **BROOKS** listed his address as 508 SW 70th Street, Lawton, Oklahoma. After receiving the tip from the Stripes employee, Detective Woelful performed drive-by surveillance of the address listed for **BROOKS**. Photos taken by Detective Woelfel during the aforementioned surveillance showed a vehicle parked at 508 SW 70th Street, Lawton, Oklahoma, that appeared similar to the robbery vehicle. The tag of the vehicle was Oklahoma plate HKW639, which was described in a citation report from November 26, 2019 as a 2005 Ford Expedition, white in color, Vehicle Identification Number (VIN) 1KMFU19515LA94619. He included multiple photos of **BROOKS** from booking photo records as well as photos taken from social media accounts. Detective Woelfel noted that the booking photos taken of **BROOKS**

in early 2018 showed him as being thin and underweight, and did not appear similar to the bank robber in the surveillance footage. However, Detective Woelfel noted that the photos of **BROOKS** taken from social media showed him carrying more body weight, and Detective Woelfel shared that in his opinion, those photos appeared very similar to the bank robber in the surveillance footage.

11.     On March 25, 2020, a second tip was submitted to the FBI via tips.fbi.gov that identified **JOHN BROOKS** as the bank robber. Further communication with the complainant revealed the individual to be a close acquaintance of **BROOKS** who wished to remain anonymous. The acquaintance saw the surveillance photo of the bank robber in the news and believed that it looked just like **BROOKS**. The acquaintance believed, with fair certainty, to have seen him in a similar shirt as what was shown in the photo. According to the acquaintance, **BROOKS** had been diagnosed and hospitalized with bi-polar disorder and was not taking his medication consistently. **BROOKS** was known to have a personality that would switch on a dime and to make crazy decisions on a whim. He was very controlling of his wife and seemed withdrawn most of the time for the past two to three years. **BROOKS** was also struggling financially and was currently desperate for money. He owned a construction company and owed a lot of people money for construction materials. **BROOKS** often could not afford to pay his mortgage payments, so his wife's father, who is a co-signer on the mortgage, would often make payments on his behalf. The acquaintance advised that **BROOKS** would spend a significant amount of time in the shed in their backyard and was very private about the shed's contents. The acquaintance also knew that **BROOKS** took his wife to a shooting range on at least one occasion to teach her how to shoot a firearm and believes **BROOKS** to keep firearms in the residence.

12. On March 25, 2020, another federal agency provided the FBI with a tip it received from one of their confidential informants. This informant claimed that **JOHN BROOKS** was the individual depicted in the surveillance photo. The informant stated that he had known **BROOKS** for an extended period of time and that they had used cocaine together in the past. The informant advised that he knew **BROOKS** to possess handguns but did not know whether he kept them in his vehicle or his house.

13. On March 27, 2020, a fourth tip was submitted to the FBI by Melanie Shackelford, Operations Manager of SWOFCU. She received information directly from her son that one of his coworkers wished to provide an anonymous tip to the bank regarding the bank robbery. The coworker advised that the surveillance photos in the news looked like **JOHN BROOKS**, and she believed that he drove a vehicle similar to the one used in the robbery. Melanie Shackelford provided that **BROOKS** owns a registered business with an address located in the same neighborhood as the victim bank, and he also has some criminal and court records against him and his business.

14. On March 28, 2020, Travice Ward, Sales Manager at Reynolds Ford, 825 North Interstate Drive, Norman, Oklahoma, was interviewed by the FBI regarding his professional opinion of the robbery vehicle. After viewing two screenshots of the robbery vehicle taken from surveillance footage, Ward believed the vehicle to be a Ford Expedition, manufactured between 2003 to 2009. Ward stated that Ford changed the front grill of the Expedition in 2003. Ward further explained that the front bumper and door handles in the photos appeared to have matching paint, which indicated that the model was most likely an upgrade, such as a Limited model.

15. Oklahoma Tax Commission records for Oklahoma tag HKW639 revealed that the vehicle is a 2005 Ford Expedition, cream in color, registered to Bethany Anne Brooks.

16. Court records show that a marriage license was filed on 9/12/2005 between **JOHN SCOTT BROOKS** and Bethany Anne Bennight.

17. Records from Comanche County Treasurer show that the address 508 SW 70th St, Lawton, OK 73505-6613, legally described as ALMOR WEST BLK 9 LOT 30 1.00 LOTS, is owned by **JOHN S. AND BETHANY A. BROOKS**.

18. Upon review of the bank surveillance footage, a unique mark was noticed on the robbery vehicle. There was a distinctive dark colored mark located underneath and to the right of the handle on the driver side door, where there appeared to be paint missing. On March 27, 2020, FBI performed physical surveillance at 508 SW 70th Street, Lawton, Oklahoma, which revealed a Ford Expedition with Oklahoma plate HKW639 parked in the front yard. It was observed that there appeared to be a dark colored mark on the driver side door underneath and to the right of the handle. On March 28, 2020, photos were taken of the Ford Expedition with Oklahoma tag HKW639 which was parked at 508 SW 70th Street, Lawton, Oklahoma. When the photos were compared to the bank surveillance footage, a similar mark could be identified in a similar location. In reviewing the photos taken of the vehicle on March 28, 2020, it was also noted that the word "LIMITED" appeared on the back of the vehicle.

19. A driver's license photo of **JOHN BROOKS** was obtained from the Bureau of Motor Vehicles. The photo contains similar characteristics to the appearance of the bank robber in the bank surveillance video, such as the color, length, and shape of his beard, the shape of his nose, the shape of his head, and the shade of his complexion.

20. A review of **JOHN BROOKS'** criminal history shows he has multiple felony convictions for drug-related offenses, the first of which was dispositioned September 2013.

21. A search of the Oklahoma Secretary of State website on April 1, 2020 revealed that **JOHN BROOKS** is the current registered agent of **JOHN BROOKS CONSTRUCTION, LLC**, and has been since July 2009, with an address of 508 SW 70th St., Lawton, OK 73505.

22. Records from Oklahoma State Courts Network show that there is a pending civil suit filed April 2017 against **JOHN BROOKS CONSTRUCTION LLC** for the issue of indebtedness.

23. The execution of a Search Warrant at 508 SW 70th Street, Lawton, Oklahoma occurred on April 2, 2020. During the search, multiple items of evidence were found. In the master bedroom of the residence, two shirts were found that appeared to have a similar blue plaid pattern as the shirt worn by the bank robbery subject in bank surveillance footage. During the search of the Ford Expedition bearing tag HKW639, which was parked in John Brooks' front yard, twenty-eight (28) $50 bills (a total of $1400), which were crisp in texture, were found on the driver's side floor, most of which were concealed underneath the floor mat. A black Samsung tablet was found inside the glove compartment of the vehicle, along with six cellular telephones. Multiple white plastic bags were found in the backseat of the vehicle. On the passenger side floor, a handwritten list of materials was found written on the back of a pack of Energizer batteries, which included "lic plate cover," "mask," "pens," and "hair". A paper vehicle tag was found lodged among foliage in the garden on the south side of the residence, which described the associated vehicle as a 2005 Ford with Vehicle Identification Number 1FMFU19515LA94619, which is one numeral off of the VIN that was manually input into **BROOKS'** Citation report received from LPD.

24. On April 2, 2020, after being read his Miranda Rights and choosing to waive them, **JOHN BROOKS** explained that several days earlier he had left his residence driving the Ford Expedition and had driven around for approximately three days. He stated that he did not stay in any one location during that time; rather, he spent the duration of that time living out of his vehicle. In the opinion of several FBI Agents consulted on the matter, an individual living out of his vehicle for a length of multiple days would be likely to keep cash money in the vehicle where it would be readily available.

25. During the search, it was observed that the Ford Expedition bearing tag HKW639 had a license plate holder screwed onto the front grill. A front license plate holder was absent from the surveillance footage of the robbery vehicle. It was further observed that the license plate holder was attached with a single screw, which appeared blue in color. During the search of the interior of the vehicle, a pack of screws was found in the back seat that appeared similar in color, shape, and texture to the screw used for the front license plate holder.

26. During the search of the Ford Expedition bearing tag HKW639, a comparison was able to be made of the unique mark on the driver side door described previously, as well as two additional unique characteristics of the vehicle that appeared to have been caused by wear and tear over time, to the robbery vehicle shown in bank surveillance footage. One such characteristic was the pattern of paint chipping on the inside of the driver's door handle. The paint appears to have been worn away on the far right side of the door handle and the chipping lessens toward the left side of the handle. The same effect can be observed on the vehicle in the bank surveillance video. Another characteristic observed on the vehicle at the residence was that the second and third numbered keypads (keyless entry feature) appeared significantly worn; that is, the black coloring appeared to have been worn away. In the bank surveillance footage, the

second and third numbered keypads on the robbery vehicle demonstrated a similar pattern of wear.

27. During an interview with Bethany Brooks on April 2, 2020, she stated that the white Ford Expedition bearing tag HKW639 was the only working vehicle they owned. On the same day, **JOHN BROOKS** explained to interviewers that he left his residence the morning of March 23, 2020, at approximately 10:15 a.m. with his two boys and drove the Ford Expedition to his mother's house, located near the Lawton landfill.

28. Mapping the route from 508 SW 70th Street, Lawton, Oklahoma to the Lawton City Landfill, located on Southwest 11th St., Lawton, Oklahoma, shows the distance to be approximately twelve miles, or approximately a 16-17 minute drive, depending on the specific route taken.

29. Through direct interaction with **JOHN BROOKS** during the search warrant execution of his residence on April 2, 2020, it was observed by the interviewing Agents as well as other Agents at the scene, that the person of **JOHN BROOKS** appeared substantially similar to the subject shown in bank surveillance footage. During the interview of Bethany Brooks on the same day, she reported to the interviewing Agents that when she saw the photo of the bank robber included in the press release, she believed it to look like her husband, **JOHN BROOKS**.

30. Analysis of the internet search history of the telephone reported by **JOHN BROOKS** to be his work phone, revealed that on March 23, 2020, a search was conducted for "money marking pen". The website that was viewed in response to the query showed Walmart's available selection of counterfeit bill detector pens.

31. On April 2, 2020, during a search of the person of **JOHN BROOKS**, the **SUBJECT PHONE** was found in his pocket. **BROOKS** advised that it was his son's phone.

10

When presented with the phone, the son exclaimed something similar to, "That's my phone! I knew dad was using it again!"

32. Based on my training and experience, I submit there is probable cause to believe that **BROOKS** was involved in the March 23, 2020 robbery of the Southwest Oklahoma Federal Credit Union, located at 6714 West Gore Boulevard, Lawton, Oklahoma 73505, in violation of 18 U.S.C. § 2113(a).

33. Obtaining cell site information for the **SUBJECT PHONE** will assist law enforcement in confirming **BROOKS'** involvement in the March 23, 2020 bank robbery by potentially placing him (or his phone) in the immediate vicinity of the bank during the robbery, thereby corroborating the information already obtained during this investigation.[1]

34. In my training and experience, I have learned **U.S. Cellular** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart,

---

[1] The government is requesting cell site data for the thirty days prior to the bank robbery described above, as well as the time after the robbery up until the time of the search warrant execution. This additional information will be useful in establishing a pattern of life, which is necessary to establish anomalous behavior. In my training and experience, getting the context of cell site data is necessary in order to better understand the significance of any one particular point of data.

even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

35. Based on my training and experience, I know that **U.S. Cellular** can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as **U.S. Cellular** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

36. Based on my training and experience, I know that wireless providers such as **U.S. Cellular** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **U.S. Cellular** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE**'s user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

37. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38. I further request that the Court direct **U.S. Cellular** to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control. Because the warrant will be served on **U.S. Cellular**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Shana M. Terry
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on April ___, 2020.

SUZANNE MITCHELL
United States Magistrate Judge
Western District of Oklahoma

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call numbers **(580) 351-7602** ("the Account"), that are stored at premises controlled by **U.S. Cellular** ("the Provider"), who's Custodian of Records can be reached at fax number 866-669-0894.

## **ATTACHMENT B**

### **Items to Be Seized**

### I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **February 22, 2020, through April 2, 2020**:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 2113(a) involving **John Brooks** during the period **February 22, 2020 through April 2, 2020.**